UNITED STATES, Appellee,

v.

Steven B. HILL, Airman, U.S. Air Force, Appellant.

No. 44,554.
ACM S25555.

U.S. Court of Military Appeals.

Oct. 1, 1984.

For Appellant: *Colonel George R. Stevens* and *Major Richard A. Morgan* (on brief).

For Appellee: *Colonel Kenneth R. Rengert* and *Captain Brenda J. Hollis* (on brief).

EVERETT, Chief Judge:

In seven specifications appellant was charged with offenses involving marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He pleaded not guilty to four of the specifications, but a special court-martial convened at Homestead Air Force Base, Florida, found him guilty as charged and sentenced him to a bad-conduct discharge, confinement and partial forfeitures for 4 months and reduction to the lowest enlisted grade. The convening and supervisory authorities approved these results; the Unit-

ed States Air Force Court of Military Review affirmed. We granted review of two issues. 15 M.J. 60 (1982).

I

■ To prove allegations that on September 6, 1981, appellant introduced five ounces of marihuana into Homestead Air Force Base and on the same day possessed six ounces at the base, the Government relied chiefly on Special Agent George K. Bowling of the Office of Special Investigations (OSI). He testified that he had met Hill in a barracks hallway; appellant "approached me and stated he was going to an Airman Daminski's house to get some bags for people." Subsequently Bowling, Hill, and an Airman Burroughs "went off base to Airman Daminski's residence north of the base to purchase some marihuana." According to Bowling:

While in the residence, Airman Hill stated he needed five or six bags. I'd have to refer to the statement; it was at least five. As Airman Hill did not have any money to give at that time Airman Daminski recorded the names that Airman Hill cited into his ledger, to go back later and get payment for them.

Airman Hill received the bags. I, myself, purchased two, and we then left the apartment. I believe Airman Hill and Airman Burroughs were going in halves together for one ounce, and the rest of the people each had an ounce.

While driving back, we had just entered the Florida gate at Homestead Air Force Base. Airman Hill was in the front seat of my vehicle. He had rolled a joint or marihuana cigarette; at that time he lit the cigarette and proceeded to pass it around.

After the Government rested, Airman First Class Scott Daminski was called as a defense witness. He testified that appellant had come to his off-base residence in Perrine, Florida; that Bowling had come there "[a] few times"; and that Burroughs "was out to my house I believe twice." Appellant and Bowling had come to Daminski's house together on one occasion, but

Burroughs had not accompanied them. Airman Daminski acknowledged on direct examination that charges were pending against him and that Bowling was "connected with those charges," because "[h]e was the OSI agent." However, he denied that this circumstance would lead him to commit perjury.

On cross-examination, Daminski acknowledged that Bowling was at his house "[o]n a couple different occasions." Then the following colloquy took place:

Q. Isn't it true on the 23rd of August that he was at your house?

A. Well, I don't recall, sir.

Q. Do you remember selling him marihuana on the 23rd of August?

DC: I object, Your Honor. As was stated before, Airman Daminski is facing charges, and obviously has the right not to incriminate himself.

MJ: Stop. Members of the Court, excuse yourselves.

Thereupon, an Article 39(a) [1] session took place during which the judge asked trial counsel to explain the relevance of the question concerning the transfer of marihuana on August 23rd. The trial counsel's response was:

I submit that it shows, would show, a bias on the part of this witness against Special Agent Bowling, in that his statement on direct testimony that he would not hold that against Special Agent Bowling, it would not cause him to perjure himself, is relatively self-serving and the number of incidents in which he was involved with Special Agent Bowling show that he's got very much to gain by discrediting Special Agent Bowling. An acquittal on these charges would have the effect of discrediting Special Agent Bowling.

Defense counsel replied that, even if Daminski's answer would be relevant, this "would be more than outweighed by the prejudicial effect of it." However, the objection was overruled.

When cross-examination resumed, the witness declined to answer trial counsel's

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

question, as well as succeeding questions about use of marihuana in Bowling's presence on August 23 and possession of marihuana in Bowling's presence on the next day. Daminski's refusal to answer led to another Article 39(a) session, wherein the military judge inquired of the defense counsel why the witness' testimony on direct examination should not be stricken.

This discussion then ensued:

DC: He is available for cross-examination on the question of whether or not Bowling, Burroughs and Hill ever came out to his house, for that specific purpose. Yes, it's true he is not available for cross-examination on everything he might have done in a three or four month period.

MJ: Well, didn't you open the door?

DC: By?

MJ: On direct, by placing into evidence whether or not he had some charges pending against him.

DC: Yes, sir. I did that—

MJ: Wasn't the Government just walking through that open door?

DC: The only reason that was done was not because it was probative of the reason he was called, but to more or less presume what the Government was going to ask him in regard to bias. That's the only reason I asked, not because I was particularly interested in that testimony, but more or less take the wind out of the sails of the prosecution.

MJ: So, for tactical reasons, you chose to bolster before the attack?

DC: Apparently so, Your Honor.

MJ: Well, I think the witness need not be present. Let me ask you, Airman Daminski, are you going to generally decline to answer any question which may tend to incriminate you?

WIT: Yes, sir.

TC: Your Honor, if I might clarify, if I may ask the witness one additional question.

MJ: Certainly.

TC: Is it your intention not to answer any questions concerning transactions between you and Airman Hill?

WIT: Yes, sir.

MJ: Does that specifically include the 6th of September?

WIT: Excuse me?

MJ: If you were asked about alleged transactions between yourself and Airman Hill on 6 September 1981 concerning five or six bags of alleged marihuana, would you decline to answer those questions?

WIT: Yes, sir.

TC: On the basis of that, Your Honor, I would move to strike.

Ultimately, the judge granted trial counsel's motion to strike the witness' testimony. We must now decide whether this ruling was correct.

## II

In *United States v. Richardson*, 15 M.J. 41 (C.M.A. 1983), which was tried before the Military Rules of Evidence took effect, we held that "in a proper case the Government, upon motion, may have stricken the direct testimony of a witness who, on grounds of self-incrimination, declines to answer questions asked on cross-examination." However, because "the questions asked" the defense witness there "related only to a 'collateral' matter," the military judge erred in striking his testimony. *Id.* at 48.

Mil.R.Evid. 301(f)(2) accords fully with the principle expressed in *Richardson*. Under that Rule Daminski's refusal to answer trial counsel's questions about events on August 23 and 24 would not have warranted striking the testimony that had been given on direct examination. Those questions concerned matters which were "purely collateral"—just as did the questions asked of the defense witness in *Richardson*. However, Daminski also stated that, if he "were asked about alleged transactions between ... [himself] and Airman Hill on 6 September 1981 concerning five or six bags of alleged marihuana," he would "decline to answer those questions." Thus, the witness made clear that he would also decline to answer questions that were

quite material to the subject of his direct testimony and to the guilt or innocence of appellant. Although those questions had not been asked by trial counsel at the time of the military judge's ruling, it was unnecessary under these circumstances for the judge to require that the prosecutor ask the specific questions in open court and for the witness to decline to answer them. Obviously, they would have been asked in due course by trial counsel; or, if not by him, then by the judge, who was fully empowered to inquire about matters as to which the witness had testified on direct examination.

■ With respect to any argument that Mil.R.Evid. 301(f)(2) is unconstitutional, the answer has already been given in *Richardson*. There we quoted extensively from *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), which upheld a trial court's refusal to allow testimony by a defense investigator because the defense would not produce a copy of relevant portions of the investigator's report for use by the prosecution in cross-examining him. As the Supreme Court explained:

> The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth.

422 U.S. at 241, 95 S.Ct. at 2171. Since the military judge's ruling prevented the court members from considering testimony which could not be properly tested by cross-examination, it conformed fully with the requirements of Article 46 of the Uniform Code, 10 U.S.C. § 846, and with the Sixth Amendment.

### III

■ We now turn to the issue of whether a specification should be dismissed for multiplicity.

Specification 3 alleges that appellant "wrongfully introduce[d] five ounces, more or less, of marihuana into" Homestead Air Force Base on September 6, 1981; and specification 4 alleges that on that date he wrongfully had "in his possession six ounces, more or less, of marihuana" at the Base. A servicemember may not be convicted both of introducing a drug on a military installation and of possessing the same quantity of that drug at the same time on that installation. *United States v. Hendrickson*, 16 M.J. 62 (C.M.A. 1983); *United States v. Miles*, 15 M.J. 431 (C.M.A. 1983); *United States v. Roman-Luciano*, 13 M.J. 490 (C.M.A. 1982). The rationale of *United States v. Zubko*, 18 M.J. 378 (C.M.A. 1984) fully applies in such a case.

From the evidence—which in this regard consisted solely of Special Agent Bowling's testimony—it appears that the marihuana introduced into Homestead Air Force Base was the same as that which Hill possessed on the base at that same time. The record gives no indication how the quantity possessed at Homestead could be greater than the quantity that appellant introduced.[2] In light of the allegations of specifications 3 and 4 of the Charge and the evidence offered in support thereof, we conclude that specification 4, which alleges simple possession, should be dismissed. However, we cannot perceive how the presence of this specification could have adversely affected appellant's sentence.

### IV

The decision of the United States Air Force Court of Military Review is reversed as to specification 4 of the Charge. The finding of guilty as to specification 4 is set aside, and that specification is dismissed. In all other respects, the decision below is affirmed.

Judge FLETCHER concurs.

---

**2.** Bowling testified that on the way back to the base, "after coming into the Florida gate a marihuana cigarette was lit up"; and the cigarette "was from a bag that Airman Hill had." Perhaps some of the marihuana in the six bags that

Hill received from Daminski was used for this cigarette; but even if this were true, it would not account for the discrepancy in quantity in the two specifications.