**UNITED STATES, Appellee,**

v.

**Robert B. FISHER, Airman First Class
U.S. Air Force, Appellant.**

No. 49,212.
ACM S25868.

U.S. Court of Military Appeals.

Aug. 31, 1987.

For Appellant: *Major Alexander S. Nicholas* (argued); *Colonel Leo L. Sergi, Lieutenant Colonel Patrick C. Sweeney* (on brief); *Reid W. Kennedy,* Esq.

For Appellee: *Major Joseph S. Kistler* (argued); *Colonel Kenneth R. Rengert* and *Captain Brenda J. Hollis* (on brief).

*Opinion of the Court*
EVERETT, Chief Judge:

This appeal concerns the procedure which a military judge should follow when the Government resists a defense request for production of material witnesses on the ground that, ultimately, their direct testimony will have to be stricken because upon cross-examination they will invoke their privilege against self-incrimination. 18 M.J. 150.

## I

Contrary to Fisher's pleas, a special court-martial with enlisted members convicted him of using marijuana on January 15, 1982; possessing and using marijuana on divers occasions in November 1981; false swearing by denial of any involvement with marijuana after January 1981; and possessing cigarette rolling paper on divers occasions during November 1981, contrary to a lawful general regulation, in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 892, respectively. However, he was acquitted of using marijuana on October 17, 1981; using marijuana on another occasion in October 1981; communicating a threat; and obstructing justice. The court-martial sentenced appellant to bad-conduct discharge, confinement for 3 months, forfeiture of $367.00 pay per month for 3 months, and reduction to the lowest enlisted grade. The convening authority disapproved the finding regarding cigarette rolling paper but otherwise approved the trial results. The Court of Military Review affirmed. 17 M.J. 768 (1983).

## II

The trial of all charges was hotly contested. As to the offenses of which Fisher was convicted, the Government's evidence tended to show that he possessed and used

marijuana at an off-base location at various times during November 1981; that he used marijuana when he had celebrated his birthday at a party in an off-base house-trailer on January 15, 1982; and that he falsely swore to a statement to investigators denying involvement with illegal drugs after his completion of a drug rehabilitation program in January 1981.

Fisher's former girlfriend, Beth Niver, and Airman First Class Floyd Bennett testified that they had been at the January 15 party and had seen appellant, among others, smoking marijuana there. Both also admitted their own drug involvement. Niver also described the November 1981 incidents involving Fisher's possession and use of marijuana.

Before trial, defense counsel requested the presence of two other persons who had attended the party on January 15. One, Mr. Stricklin, was no longer in the Air Force and had been promised anonymity; but the Government knew of his whereabouts. The other, Airman Leonard, was in confinement at Lowry Air Force Base pursuant to his court-martial sentence. Defense counsel indicated that these witnesses would testify that they had been at the party and had not seen Fisher using marijuana there. Also, Stricklin would testify that he had not seen Fisher use marijuana since January 1981. *See* Mil.R.Evid. 103(a)(2), Manual for Courts-Martial, United States, 1969 (Revised edition).

Trial counsel acknowledged the relevance of the witnesses' testimony but, nonetheless, resisted the defense request. He explained that, if the witnesses did testify, he intended to ask them questions on cross-examination which they would refuse to answer on self-incrimination grounds. In support of this revelation, he offered a letter from an area defense counsel which asserted that, if Stricklin and Leonard were "asked about an October 17, 1981, 15 January 1982, October 1981 or November 1981 use or possession of marijuana, both will assert their Article 31 [, UCMJ, 10 U.S.C. § 831] or 5th Amendment rights on any question which may tend to incriminate

them." Trial counsel indicated that, when the witnesses did invoke these privileges, he would move to strike their direct testimony. *See* Mil.R.Evid. 301(f)(2). Accordingly, he reasoned that there was no need to call them in the first place.

The military judge and both counsel discussed the prosecution's argument at some length. At one point, defense counsel noted that it was his understanding that Leonard had been tried and acquitted of "the same offense" arising out of the January 15 party as then faced appellant and that, accordingly, "no matter how you slice it, I don't think that he could claim any privilege. I don't think there's any that exists." Trial counsel responded that, because the party was off-base and, therefore, involved local authorities, Leonard still had a Fifth-Amendment privilege to assert if he wished. Defense counsel replied that the State of Georgia had never tried anyone for possession of marijuana without having the marijuana itself to test —and, of course, as to the party in question, the only evidence of marijuana use was testimony of alleged eyewitnesses.

On another point, defense counsel urged that, because the privilege against self-incrimination was a personal one, the witnesses ought to be called and given the opportunity to assert the privilege, if they chose, rather than have others merely represent that the witnesses would do so. Moreover, defense counsel submitted that, in any event, the military judge could order the witnesses to testify if the answers would, in fact, not be incriminating—but, again, that this could only be ascertained if the witnesses were called.

A discussion ensued as to exactly what trial counsel intended to ask the witnesses on cross-examination and whether these questions would be subject to a privilege not to answer. The prosecutor responded that he intended to ask each witness whether he or she had smoked marijuana at the party. Defense counsel suggested that such a question would not only be incriminating but also irrelevant because it would not go to the witness' credibility; and he

indicated that he would object to the question being asked. Of course, if the objection were sustained, any self-incrimination of the witness would probably be avoided.

Before ruling, the military judge inquired of counsel whether he correctly understood their respective positions:

> MJ: ... [T]he government feels, I take it, that if they're coming here to testify, that when you obviously intend to cross-examine them, you will not be able to elicit any information that you feel would somewhat [a]ffect their credibility and, therefore, if they rely on their rights, you will ask that I strike their testimony, so what you're saying is it's a waste of the government's time and effort to bring them here?
>
> TC: Yes.
>
> MJ: The defense's position is notwithstanding the fact that that may very well be so, it may not be so because perhaps it shouldn't be stricken and I can't rule on that until such time as they testify?
>
> CDC: That's true and you may not even permit the question.

Ultimately, the judge denied the defense its witnesses, stating:

> MJ: Well, based on the proffers, both by the United States as well as the accused and based on the law as I see it at this point, I'm going to deny the request to have these two witnesses brought in to testify, in light of the fact that they apparently, according to again the proffers of the United States, rest on their rights under Article 31 or the Fifth Amendment on matters that the court feels, if asked, would not be collateral and would require that their testimony be stricken.

On appeal from this ruling, the court below "assume[d] *arguendo* that the military judge abused his discretion in refusing to order the production of the requested witnesses." The court went on, however, to conclude "beyond a reasonable doubt that the proffered testimony would not have tipped the scales in the accused's bal-

ance. *United States v. Richardson,* 15 M.J. 41 (C.M.A. 1983); *United States v. Hampton,* 7 M.J. 284 (C.M.A. 1979); *United States v. Lucas,* 5 M.J. 167, 168 (C.M.A. 1978)." It did so on the basis of "the content of the proffered testimony and the Government's key witness." The court explained:

> Both L and S were expected to testify that while present at the parties on 17 October 1981 and 15 January 1982, they did not observe the accused use marihuana. While this expected testimony is material in a collateral sense, it is not essential, *for it does not negate the Government's case....* The fact that L and S did not personally observe the accused use marihuana at the parties does not negate evidence that the accused did, in fact, use marihuana.

*United States v. Fisher, supra* at 770.

### III

### A

On this appeal, a number of interesting questions have been raised and capably addressed by counsel for both sides. First, were trial counsel's intended questions, which would have gone to the witnesses' marijuana use at the party in an effort to lessen their credibility in the court members' eyes, *see* Mil.R.Evid. 608(b), purely collateral? If so, then the witnesses' refusal to answer such questions would not be a basis for striking their direct testimony. *See United States v. Richardson, supra* at 47–48; Mil.R.Evid. 301(f)(2); *United States v. Hill,* 18 M.J. 459 (C.M.A. 1984).

Second, if, as the record suggests, trial counsel had several alternative means of showing that the witnesses had used marijuana at the party, should the military judge in his discretion, *see* Mil.R.Evid. 301(f)(2), have required him to utilize those means of attacking the witnesses' truthfulness rather than striking important defense testimony as the remedy for the witnesses themselves declining to admit their use? *See United States v. Richardson, supra* at 48. Though use of extrinsic impeachment

evidence would usually be objectionable, see Mil.R.Evid. 608(b), defense counsel might well have been willing to waive his objection thereto, see Mil.R.Evid. 103(a)(1), in lieu of losing the direct testimony of the defense witnesses, or perhaps the defense would even have stipulated that Leonard and Stricklin were using marijuana themselves.

Third, to the extent that the witnesses' marijuana use related to their ability to perceive what appellant was doing—as distinguished from their truthfulness[1]—should the military judge in his discretion have compelled the Government to use available extrinsic evidence in lieu of asking the witnesses themselves about their use?

Fourth, even if these defense witnesses had been called and had been permitted by the military judge to invoke their self-incrimination protections against cross-examination questions by the prosecutor, would it have been appropriate for the military judge—instead of striking the direct testimony on behalf of the accused—to require the prosecutor to seek testimonial immunity for the witnesses? *See United States v. Richardson, supra* at 47 n.4. Ancillary to this question is whether a grant of testimonial immunity by a convening authority is sufficient to protect the witness against use of his testimony by a state prosecutor—a question as to which at least one Federal court has found that an affirmative answer "is beyond cavil," *see Terzak v. Usher,* 571 F.Supp 1203, 1205 (D. Colo. 1983).[2]

Fifth, to what extent, if any, is it within the factfinding authority of the Court of Military Review, *see* Art. 66(c), UCMJ, 10 U.S.C. § 866(c), to weigh testimony which was never given but the existence of which

was assumed *arguendo* and then to conclude that such testimony would not have established a reasonable doubt as to appellant's guilt?

We shall not address these stimulating issues because we have concluded that, in any event, the military judge erred in not requiring the presence of the two witnesses.

## B

At trial, the Government "agreed" that the testimony of the two witnesses would be relevant. *See* Mil.R.Evid. 401. Now, however, the Government urges that the witnesses were not *material* and, accordingly, there was no duty to produce them. *See United States v. Jefferson,* 13 M.J. 1 (C.M.A. 1982); *United States v. Roberts,* 10 M.J. 308 (C.M.A. 1981).

Materiality of testimony in this regard depends on whether the testimony would "negate the Government's evidence or ... support the defense." *United States v. Jefferson, supra* at 3, quoting *United States v. Iturralde-Aponte,* 1 M.J. 196, 198 (C.M.A. 1975). *See United States v. Dorsey,* 16 M.J. 1 (C.M.A. 1983). In this connection, the court below reasoned that testimony that the two witnesses had not *seen* appellant use marijuana at the party would not negate the Government's evidence that he had in fact used it. *See generally United States v. Jefferson, supra* (the fact that someone across the hall from the room in which a rape allegedly had occurred heard no scream did not necessarily mean that the victim had not screamed).

Under other factual circumstances, we might agree. Here, however, the party was held in the living room and the kitchen of a small house-trailer—rooms which the

---

1. Evidence used to show inability to perceive is not "impeachment" evidence like that which concerns truthfulness; so the defense would not have the same basis for objecting to extrinsic evidence of marijuana use by the witnesses when offered for this purpose.

2. Citing *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). We tend toward the same

conclusion. If, as *Murphy* held, Federal courts can be precluded from considering evidence derived from immunized testimony given in hearings before a state-established commission, it is hard to see why state courts would not be similarly limited by a grant of use-immunity as to testimony given in a trial by court-martial—which can affect a servicemember's liberty or even his life.

Government acknowledged in oral argument in this Court were "pretty much adjoining rooms there in the house-trailer." Accordingly, it becomes much more probable than might otherwise be the case that, if someone among the eight to fifteen participants had used marijuana at the party, the others would have known it—especially when, like appellant, the person in question was the honoree of a birthday party.

While contending that the witnesses' failure to see Fisher using marijuana did not necessarily mean that he had not used it, the Government conceded in its oral argument that "we don't really have the facts to determine whether or not it would have been impossible for him to use marijuana and be undetected from the other individuals." This concession graphically illustrates the problem with ruling on an important matter like this on the basis of speculation and supposition as to what the witnesses might have said. When it is the Government which has opposed development of such important information, the accused cannot be penalized for the deficiencies in the record. *See United States v. Rivera,* 24 M.J. 156 (C.M.A. 1987).

Under these circumstances, we conclude that testimony of two participants at a party in a small area like this could have negated the government evidence *and* supported the defense. Accordingly, Stricklin and Leonard were material witnesses.

If the military judge had compelled the witnesses' attendance in court or for a deposition, he then could have—and should have—permitted their examination by counsel out of the presence of the members. In this way he would have provided an adequate basis to determine the various issues mentioned above. *See United States v. Hill,* 18 M.J. at 461. Perhaps, if all else failed, the military judge might have concluded that the witnesses' direct testimony should not be admitted into evidence. However, the judge's failure to permit the parties to develop the facts precluded him from exercising his discretion in an informed and knowledgeable manner. *See* Mil.R.Evid. 301(f)(2).

## IV

Having decided that the military judge erred in not compelling the attendance of the material witnesses requested by the defense, "[w]e must decide whether 'evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice.' " *United States v. Jefferson, supra* at 4, quoting *United States v. Lucas,* 5 M.J. 167, 172–73 (C.M.A. 1978).

In determining whether Fisher was prejudiced by the refusal to produce material witnesses, we must take into account that the only substantial evidence of his guilt was the testimony of the government witnesses and that no marijuana was seized. Moreover, these government witnesses were not themselves unblemished; and defense counsel made significant efforts to impeach them. Without the requested witnesses, however, the defense case rested primarily on appellant's general denial. Under these circumstances, we cannot conclude beyond a reasonable doubt that the two requested witnesses "would not have tipped the balance in favor of the accused and [that] the evidence of guilt" was "so strong as to show no reasonable possibility of prejudice" concerning the conviction for drug use on January 15, 1982.

Airman Leonard's proferred testimony would only have concerned the party on January 15, and Mr. Stricklin's testimony that he had not seen Fisher use marijuana since January 1981 is subject to the obvious limitation that appellant might have used it outside his presence. Nonetheless, we do not believe that the prejudice for failing to produce these witnesses related only to the January 15 offense. As to the November offenses, the Government's case depended on the testimony of Beth Niver. If the evidence provided by Leonard and Stricklin had persuaded the court members that Niver was testifying falsely about the events at the party in January, they might also

have doubted her veracity with respect to the events in November. In that case, there would have been no choice but to acquit appellant as to that charge as well.

If the failure to produce the requested witnesses affected the findings of guilty as to the marijuana offenses, then inevitably Fisher was also prejudiced as to his conviction of false swearing. His allegedly false statement concerned his abstinence from drug use after January 1981. Apparently, the court-martial's basis for finding that he had lied in that regard was by reason of his involvement with marijuana in November 1981 and at the party on January 15, 1982. Aside from these incidents and the alleged use of which he was acquitted, there was no basis for finding that he had sworn falsely; so this conviction also cannot stand.

### V

The decision of the United States Air Force Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.[3]

Judge SULLIVAN did not participate.

COX, Judge (concurring):

I agree with Chief Judge Everett's conclusion that the military judge erred in not granting appellant's motion to compel attendance of the witnesses, Leonard and Stricklin. Obviously, their testimony that they were present in the trailer during the January 1982 party and did not see appellant use marijuana would have been important evidence, if believed by the factfinder. It was manifestly unfair to permit the Government to rely on attendees at the party to convict appellant, but not permit appellant to call attendees whose testimony might have acquitted him.

This is another example of a military judge's allowing the Government the functional equivalent of a "preemptive strike" at the defense case. *See United States v. Rivera*, 24 M.J. 156, 158 (C.M.A. 1987). Although it may be a proper use of a pretrial motion for the Government to challenge the materiality and necessity of defense witnesses (*see* para. 115a, Manual for Courts-Martial, United States, 1969 (Revised edition); R.C.M. 703(b)(1), Manual for Courts-Martial, United States, 1984), the judge's ruling should not have been predicated on *speculation* as to the havoc the *prosecution* might be able to wreak on cross-examination.

For one thing, it is not at all clear that the proposed cross-examination was sufficiently germane to the central issue (*i.e.* appellant's alleged use of marijuana) that striking the testimony would have been warranted. Mil.R.Evid. 301(f)(2), 1969 Manual, supra. For another, unless the defense concedes the point, it cannot be assumed that the witnesses would have asserted their right to remain silent, especially as such right might be waived during direct testimony. *See Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed.2d 344 (1951). The judge should have permitted appellant to present his witnesses and let events take their course.

Furthermore, assuming evidence of the witnesses' personal use of marijuana at the party was relevant (e.g., to show bias, motive to misrepresent, inability to perceive events due to sense impairment, etc., Mil.R.Evid. 608(c)), it does not appear that the Government's ability to discredit the direct testimony would have been diminished. Notwithstanding Mil.R.Evid. 301(f)(1) and 512(a)(2), which prohibit commenting on, or drawing adverse inferences from a witness' claim of privilege, the credibility of a witness who testifies for the defense but refuses to answer legitimate government

---

3. We have considered the alternative of a *DuBay* hearing, *see* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), wherein the testimony of Leonard and Stricklin could be taken in order to determine what their testimony would have been. However, under the circumstances of this case, we doubt that such a hearing would be worthwhile—especially since it would protract appellate review still further.

questions is, as a practical matter, nil. Even if you call it a sanitary landfill, a garbage dump still stinks. Thus, the Government's stratagem was probably unnecessary.

The reason this case has been difficult for us to resolve is that I have heretofore been unpersuaded that this error should "spill over" to the November 1981 incidents (specifications 1 and 2 of Additional Charge II) and the false-swearing charge (specification 3 of the Charge). In view of the fact that Judge Sullivan is not participating (the case was argued prior to his ascension to the bench), I have decided to join the Chief Judge in reversing all the charges and specifications, thereby giving appellant the ultimate benefit of the doubt.