OPINION OF THE COURT
RUSSELL, Judge:
A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of distribution and use of methamphetamine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for twelve months, and reduction to Private El.
This case is before the court for initial review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.
The appellant contends, inter alia, that the military judge abused his discretion when he denied the defense motion to compel the production of a necessary witness. We agree.
I. '
Special Agent (SA) Reinhold was a Criminal Investigation Division (CID) member assigned to drug suppression duties. He was a serious combatant in the war on drugs, who was once heard to say, “I don’t like drug *826 dealers and I’ll do anything I can to get them.” Special Agent Reinhold learned that a civilian had information regarding drug use by a soldier. On 5 June 1992, he made initial contact with the individual (a woman), who related that the appellant was using methamphetamine, had a very severe drug problem, and needed help. She also informed him that time was of the essence as the appellant was about to be discharged from the Army. Special Agent Reinhold conducted a crime records check of the appellant which revealed no previous record of misconduct. Nevertheless, because of the woman’s report of appellant’s drug use, SA Reinhold reasoned that the appellant was predisposed to distribute small amounts of methamphetamine to other soldiers, and that he would likely have a small amount of the drug on hand at his home.
Based on those assumptions, SA Reinhold decided to use the woman to assist in an investigation of the appellant. He recruited her as a Registered Source (RS) that same day. The RS agreed to assist the CID in perfecting a case against the appellant in exchange for cash in an amount to be determined based on her success. It is not clear how much SA Reinhold learned about the RS during the short evaluation process leading to her recruitment. However, the record indicates that information existed to show that she was of generally disreputable and unreliable character.[1] Special Agent Reinhold instructed the RS to arrange to introduce him to the appellant, and then to arrange for him to make a controlled purchase of methamphetamine from the appellant. However, SA Reinhold did not tell the RS not to offer or provide illegal drugs to the appellant as an inducement for him to participate in a drug transfer.
Special Agent Reinhold met the appellant for the first time on 7 June 1992, at a local bar frequented by the appellant and various CID personnel, and where the RS worked as a hostess. That meeting consisted solely of the exchange of brief social pleasantries; there was no discussion of drugs. Shortly thereafter, the RS privately contacted the appellant and arranged a meeting for 9 June. However, SA Reinhold did not monitor these important telephonic contacts, during which the RS apparently persuaded the appellant to meet with SA Reinhold. On 9 June, the RS and SA Reinhold drove to the appellant’s home. Because of time constraints, SA Reinhold did not attempt to obtain approval for wire surveillance or impose other controls; consequently, the RS was not monitored while she was alone with the appellant. Moreover, though SA Reinhold remained in the vehicle while the RS entered the appellant’s house alone, he did not search the RS before she entered or after she left the premises. She returned to the vehicle approximately fifteen minutes later and reported that the arrangement for the purchase had been concluded and that the appellant had agreed to let SA Reinhold come into the house.
Once inside, SA Reinhold observed that the appellant was reluctant to participate. The appellant questioned why he was being asked to retrieve the drugs from Ms. Dillingham when the RS appeared capable of doing so. The RS explained that she had had a falling out with Ms. Dillingham and prevailed upon the appellant to do her the favor of going in her place. Prior to the appellant’s departure, SA Reinhold asked the appellant if he had ever done cocaine, and recalls that the appellant responded by saying, “I’ve done it all”; however, the appellant recalls his response as, “I don’t touch the stuff’. Two hundred dollars in United States currency was transferred to the appellant, who left the RS and SA Reinhold to wait alone in his house while he went to Ms. Dillingham’s. The appellant returned to his home approximately thirty minutes later and produced two packets of methamphetamine that ended up in the possession of SA Reinhold. The RS then suggested that SA Reinhold “should offer [the appellant] a hit for going and getting the stuff’, and pushed forward an empty ashtray in which SA Reinhold was to deposit *827 the drugs. Special Agent Reinhold left the house without providing any drugs to the appellant. As soon as SA Reinhold and the RS were alone, he told her, apparently for the first time, that she was not to-use drugs as an inducement.
Shortly after the first transaction, the RS privately attempted to arrange a second encounter between the appellant and SA Reinhold which was to take place on 10 June. However, the appellant refused to allow SA Reinhold to enter his house again. Special Agent Reinhold gave the RS $200.00 in controlled funds and sent her to enter the appellant’s house alone. Once again, the RS was not searched before she entered the house, and her private personal and telephonic contacts with the appellant were not monitored. Inside the house, the RS gave the $200.00 to the appellant. Shortly thereafter, he left and drove to Ms. Dillingham’s house, which he entered briefly before returning to his car. The appellant was apprehended as he drove back to his house. A thorough search of his car and person revealed no drugs or controlled funds. A subsequent search of the RS’s purse also met with negative results. A urinalysis conducted on 11 June revealed the presence of methamphetamine metabolites in the appellant’s urine.
II.
During the Article 32, UCMJ, investigation, Ms. Dillingham, the person from whom the appellant allegedly obtained the drugs, testified" under oath that the RS was a drug user who had stored drugs in her apartment. Ms. Dillingham described in detail how the RS had duped the appellant into unknowingly transferring drugs to the CID. The trial defense counsel consistently and strenuously insisted that the RS was a material witness, and that it was critical to the defense case that they be provided with the RS’s contact data and the sequestered RS file withheld by the CID. The trial counsel, equally consistent and persistent, argued against release of the information on the basis of the CID’s promise of confidentiality, despite ample evidence that the RS was ready, willing and able to testify if necessary.
The defense moved for an order requiring the CID to produce the identity of the RS and notes and statements in its possession pertaining to her. The defense also moved to produce the RS as a witness. The motions were based in essence on the contentions that the RS was the sole witness to matters bearing on the defense of entrapment, and that the Article 32 testimony of Ms. Dillingham clearly indicated that the RS’s testimony would be helpful to the defense. The trial counsel strenuously opposed both motions, stressing the failure of the defense to comply with Rule for Courts-Martial [hereinafter R.C.M.] 703.[2] The military judge granted the first motion, stating:
[I]s it not a bit disingenuous to argue that the defense has not complied with R.C.M. 703 by providing the name and the address ... of the witness when the very thing the defense in part is asking for are those details ... which are apparently within the control of the government?
The military judge deferred ruling on the second motion to give the defense time to determine what expected testimony for the defense would be available. He also specifically found that “there has been no showing at this time that the witness, in fact, has material testimony and it is simply a conjecture or surmise as to what the witness might say____” A few days later, the government informed the defense that it did not intend to call the RS as a witness, or to discover her whereabouts. On 30 October, the defense counsel formally notified the government of its intent to present the defenses of entrapment and innocent ingestion, both of which would require the testimony of the RS[3].
*828 Court reconvened on 9 November. The defense counsel renewed his request to produce the RS as a witness, continuing to urge as his primary basis the fact that she was necessary to establish entrapment or lack of guilty knowledge. Additionally, the defense counsel informed the court that the CID’s RS file revealed multiple bases to impeach the credibility of the RS. Most importantly, the defense counsel reported that he had spoken with the RS, but that she would not discuss details of the case with him until she had coordinated with the military police. He told the military judge that he had established contact with the RS through a social welfare agency that apparently maintained contact with her to provide public assistance payments to her. Moreover, defense counsel stated his belief that the RS could be easily located for service of subpoena with the assistance of that agency.[4]
Notwithstanding the facts provided by the defense describing the witness’s materiality and availability, the military judge denied the motion to produce the witness. The military judge concluded, “it remains a truism that you’ve got a witness who is either avoiding subpoena or is simply unavailable”, and found that inasmuch as the RS could not be located or contacted after five months to obtain a statement, there wasn’t any real likelihood that she would be found in the next couple of months. Moreover, the judge noted his view that much of the information that the defense counsel had “tossed out” relating to reliability and credibility, could be elicited through cross-examination of government witnesses or by calling other defense witnesses. Though touching on possible grounds for a legal determination of either lack of materiality or unavailability, the judge did not clearly settle on a precise legal basis for his ruling.
III.
The defense is entitled to the compulsory production of any witness whose testimony on the merits would be relevant and necessary, unless the witness is “unavailable” within the meaning of Military Rule of Evidence 804(a) [hereinafter Mil.R.Evid.]. R.C.M. 703. A witness’s testimony is relevant and necessary if it will negate the government’s evidence or support the defense’s. United States v. DeHart, 33 M.J. 58 (C.M.A. 1991). Moreover, failure to produce an available and necessary witness is prejudicial unless the record of trial demonstrates beyond a reasonable doubt that the excluded testimony would not have tipped the balance in favor of the accused and that the evidence of guilt is so strong as to show no reasonable possibility of prejudice. United States v. Fisher, 24 M.J. 358 (C.M.A.1987). In light of these prevailing legal precedents, we must resolve three issues: (1) whether the defense met its burden in identifying the witness and establishing materiality under R.C.M. 703(c)(2); (2) whether the military judge abused his discretion in ruling that the RS was “unavailable” within the meaning of Mil. R.Evid. 804(a); and, (3) if the military judge erred by not compelling the appearance of a material witness, whether the error was prejudicial to the appellant. We hold that the defense met its burden to identify the witness and establish materiality under R.C.M. 703(c)(2). In addition, we find that the facts of record demonstrate that the military judge abused his discretion by ruling that the RS was “unavailable” within the meaning of Mil. R.Evid. 804(a). Finally, we hold that the judge’s error was prejudicial.
A. Materiality
The identity or contact data for the government’s confidential informant is information within the exclusive control of the government. The government is responsible for exercising due diligence in maintaining contact with such persons in order to reasonably ensure their appearance at trial if the interests of justice require it. The government may oppose release of the identity of the confidential informant, but at the same time it must be prepared to produce the witness if his or her testimony is relevant and helpful to the defense or essential to a fair trial. See Mil.R.Evid. 507; United States v. Watkins, 32 M.J. 1054, 1057 *829 (A.C.M.R.1991). The issue of whether the government lost contact with the witness through neglect is not presented in this case. Here, the defense counsel overcame government recalcitrance and on his own initiative located the witness.
Rule for Courts-Martial 703 does not require that the synopsis of a witness’ expected testimony be based on a personal interview. However, the military judge implied that without input from the RS herself, her potential testimony would be “conjecture or surmise”. Where lack of cooperation by the witness or the government makes the witness essentially inaccessible to the defense, the synopsis of expected testimony may be based on other reliable information. In this case, the witness would not speak to the defense without approval from the military police; in other words, though the development of her testimony was within the power of the government to control, she was essentially not accessible to the defense. Inasmuch as the defense could not reasonably be expected to do more to obtain the RS’s personal statement, they could properly rely on the most authoritative firsthand source left to them: the unrebutted sworn testimony of Ms. Dillingham. That testimony indicated unequivocally that, if the RS was present and testified truthfully, she would admit that the drugs that the appellant transferred to the CID were hers and that she had framed an elaborate hoax in order to falsely implicate the appellant in an illegal drug transfer.[5] Accordingly, we find that there was no basis in fact for the conclusion that the defense assertions about what the RS might testify to were “conjecture or surmise”. See United States v. Bennett, 3 M.J. 903 (A.C.M.R.1977).
This case raised the defenses of innocent ingestion and entrapment, and hinges on a credibility contest between the appellant and SA Reinhold. These salient issues were clearly raised prior to trial. Inasmuch as the RS was the sole witness to all of the critical transactions involving the appellant, Ms. Dillingham and SA Reinhold, she was a noncumulative merits witness whose testimony was essential to resolving the central issues of inducement, guilty knowledge, and the credibility of a CID agent whose competence and reliability were called into question. We hold that the defense clearly met its burden of showing that she was a material witness who should have been compelled to appear if available. See United States v. Brown, 28 M.J. 644, 646 (A.C.M.R.1989) (citing United States v. Tangpuz, 5 M.J. 426 (C.M.A.1978)).
B. Availability
The RS is a civilian witness amenable to subpoena. Therefore, the government cannot claim that she is “unavailable” without an attempt to personally deliver a subpoena along with the fees and mileage required by statute. United States v. Bums, 27 M.J. 92, 97 (C.M.A.1988). After the defense demonstrated that a material witness had made herself inaccessible to them and provided a reasonable method for the government to locate her, it was incumbent upon the military judge to delay the trial long enough for the government to diligently attempt to personally serve a subpoena on the witness. Accordingly, in the absence of evidence of such an attempt at personal service, we find that there was no basis in law or fact for the military judge’s determination that the RS was unavailable.
C. Prejudice
In this case the defense was erroneously denied the presence of a material witness. As such, this court is left to attempt to decide whether the evidence in the record of trial demonstrates beyond a reasonable doubt that the RS’s testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice. Fisher, *830 24 M.J. 358. However, a comparison of the subject testimony with the record is impossible because the RS’s testimony was never developed. We need not speculate what her testimony would have been, nor must we rely on the controverted testimony of the appellant, Ms. Dillingham, or SA Reinhold for illumination.
The Court of Military Appeals has set the standard for judicial review in cases where appellate judges are left with a bare record. If it is the government that has opposed the development of important information for the record, the accused cannot be penalized for the deficiencies. Fisher, 24 M.J. at 362; see United States v. Rivera, 24 M.J. 156, 157 (C.M.A.1987). We find that the government’s opposition to the development of the RS’s testimony was unreasonable from the time when they were on notice that the testimony of the RS would be material at trial on the issue of entrapment. Moreover, it was that unreasonable opposition of the government, unchecked by the military judge, that was the primary reason why the salient testimony of the RS is not a part of the record.
The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.
Senior Judge WERNER and Judge LANE -concur.

. The RS file released to the defense counsel revealed or led to evidence of drug use, larceny, false statements, sexual and other social involvement with CID personnel, severe financial problems, and substantial basis for disaffection with Ms. Dillingham, a primary defense witness. Ms. Dillingham's involvement is discussed further on.

. Generally, R.C.M. 703 establishes procedures and standards governing the production of witnesses at courts-martial.

. At trial, the military judge ruled that the issue of entrapment was raised. However, though on ' notice that the defense would attempt to raise the issue, the government did not see fit to present the testimony of the RS, who was the sole witness to whatever inducement occurred. Inasmuch as we decide this case on other grounds, we do not reach the issue of whether or not the government, without the testimony of the RS, met its burden to establish beyond a reasonable doubt that the appellant was not entrapped.

. The agency, though apparently willing to relay a defense request to speak with the RS, was understandably unwilling to release specific contact data to the defense.

. Though it may be speculated that Ms. Dillingham's testimony is false (there is evidence she was an accomplice and her character for truthfulness was mightily impeached with drug convictions and prior false statements), it remains as the only sworn, firsthand evidence of what the RS could be expected to testify to regarding issues central to the defense case. The government could have easily prevented the necessity to rely on Ms. Dillingham's testimony by not hindering the development of the RS's testimony. Moreover, we note that Ms. Dillingham's testimony is not inherently incredible; it arguably fits with the uncontested fact that the RS offered amphetamine to the appellant at the conclusion of the drug transaction, which also strongly implies that the RS was unduly motivated to perfect a case against the appellant.