**UNITED STATES, Appellee,**

v.

**Specialist Glen R. BROWN,
275–70–7958, United States
Army, Appellant.**

**ACMR 8801385.**

U.S. Army Court of Military Review.

31 March 1989.

For Appellant: Captain Thomas A. Sieg, JAGC (argued); Major Marion E. Winter, JAGC (on brief).

For Appellee: Captain Marcus A. Brinks, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC (on brief).

Before MYERS, KENNETT and GIUNTINI, Appellate Military Judges.

OPINION OF THE COURT

MYERS, Senior Judge:

On 16 and 17 June 1988, appellant was tried by general court-martial composed of officer members at Fort Dix, New Jersey. Contrary to his pleas, appellant was convicted of three specifications of possession and distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ]. The convening authority approved the sentence to a bad-conduct discharge. Before us, appellant alleges that the military judge erred by denying appellant's request for witnesses on the merits. We agree.

During a pretrial Article 39(a)[1] session, the trial defense counsel requested the mili-

1. Article 39(a), UCMJ.

tary judge to require production of witnesses pursuant to R.C.M. 703.[2] The record indicates that on Thursday, 16 June 1988, the morning of trial, the trial counsel informed the trial defense counsel that three of the witnesses previously requested would not be present for the trial. The record further reflects that on Friday, 10 June, the trial defense counsel called the trial counsel by telephone regarding witnesses that would be required in presenting appellant's case. Defense counsel asserted that the telephone call provided the government with verbal notification of the written list which followed on Monday. Trial counsel admitted receiving the telephone call from the defense counsel "late Friday afternoon," however he felt that the defense counsel was just running through a list of potential witnesses and that he was not compelled to act on it until the request was presented in writing.

The defense counsel submitted a written request for witnesses on Monday, 13 June. However, on Tuesday, 14 June, the trial counsel denied the request because the request did not contain a sufficient synopsis of expected testimony of the witnesses as required by R.C.M. 703(c)(2)(B)(i).[3] Later that same day, the defense counsel provided the trial counsel with an amended list which contained a more detailed synopsis of the expected testimony of the requested witnesses.

The military judge began addressing the defense request by stating:

> Lets just discuss right now whether or not this is even timely. If my determination is that it's not timely, then it doesn't

matter how critical they are to the case, we're going to move on—or at least it matters certainly to the defense, but it doesn't matter with respect to the motion. You can then, if you'd like, for purposes of appellate review, speak for a reasonable period of time about how critical they would have been had they been here to testify.

Without discussing whether the witnesses were material to the defense case, the military judge ruled that the request was not timely and that the government made "some due diligence to act on the request." [4] The judge elaborated that when the trial is conducted in one state (Fort Dix, New Jersey) and the installation where the offenses occurred, the accused is stationed, and material witnesses are located is in another state (Carlisle Barracks, Pennsylvania), two days' notice is not sufficient time to require the government to produce witnesses.[5]

The military judge then suggested to the defense counsel the possibility of a continuance. The defense counsel requested a continuance in order to obtain the presence of the witnesses. The military judge requested an offer of proof as to the witnesses' expected testimony, then denied the motion for a continuance based on the government's willingness to stipulate to the testimony and because he believed that two of the requested witnesses' testimony regarding "military character" would be cumulative with the testimony of other witnesses who were present.

The defense counsel requested that the government be required to present evi-

---

**2.** Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 703 [hereinafter MCM, 1984, and R.C.M., respectively]. R.C.M. 703(b)(1) provides that "[e]ach party is entitled to the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be relevant and necessary." "Relevant testimony is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." R.C.M. 703(b)(1) discussion.

**3.** R.C.M. 703(c)(2)(B)(i) provides that "[a] list of witnesses whose testimony the defense considers relevant and necessary on the merits ...

shall include the name, telephone number, if known, and address or location of the witness such that the witness can be found upon the exercise of due diligence and a synopsis of the expected testimony sufficient to show its relevance and necessity."

**4.** Although apparently prepared to do so, the government never presented any evidence as to what efforts were made to obtain the requested witnesses.

**5.** The parties agreed at trial that the driving distance between Fort Dix, New Jersey and Carlisle Barracks, Pennsylvania is two to three hours.

dence as to its efforts to obtain the witnesses and that the military judge make specific findings of fact with regard to the timeliness and sufficiency of the requests made for witnesses for the purpose of appellate review. Without making any specific findings, the military judge stated that a request "made on the 13th of June" for witnesses to be produced for a trial to be held on the 16th of June was not timely.[6] The military judge refused to require the government to recount the efforts made to obtain the witnesses.

■ "The sixth amendment to the United States Constitution grants to an accused in a criminal prosecution the right 'to have compulsory process for obtaining witnesses in his favor.'" *United States v. Hinton,* 21 M.J. 267, 269 (C.M.A.1986).[7] However, the right of an accused to compel attendance of witnesses is not absolute. *United States v. Sweeney,* 34 C.M.R. 379 (C.M.A. 1964). It involves consideration of relevancy and materiality of the expected testimony. *United States v. Carpenter,* 1 M.J. 384, 385 (C.M.A.1976). An accused has the right to have the testimony of a witness when such testimony is material to an issue before the court. *United States v. Combs,* 20 M.J. 441, 442 (C.M.A.1985). Testimony is material if it "negate[s] the Government's evidence or ... support[s] the defense." *United States v. Fisher,* 24 M.J. 358, 361 (C.M.A.1987) (citation omitted). While military necessity or various personal circumstances relating to requested witnesses may be proper criteria to determine when the testimony can be presented, the sole factor for consideration in determining whether a witness will testify at all is materiality. *United States v. Carpenter,* 1 M.J. at 386. However, a witness whose testimony is material need not be produced if the testimony is cumulative to that of other witnesses. *See United States v. Tangpuz,* 5 M.J. 426, 429 (C.M.A.1978) (Judge Cook attempts to limit his language in *United States v. Carpenter,* 1 M.J. at 385-6, which suggested that a requested witness must always be produced if such witness is material by stating that the physical attendance of a material witness is not required if the testimony would be cumulative with that of other witnesses). *See also* R.C.M. 703(c)(2)(D) (if the military judge grants a motion to produce witnesses, the government must produce the witnesses or abate the proceeding).

■ Factors to be considered when determining whether an accused is entitled to the personal attendance of a witness are

the issues involved in the case and the importance of the requested witness as to those issues; whether the witness is desired on the merits or the sentencing portion of the trial; whether the witness' testimony would be merely cumulative; and the availability of alternatives to the personal appearance of the witness, such as deposition, interrogatories or previous testimony.

*United States v. Tangpuz,* 5 M.J. at 429. This list of factors is not meant to be exhaustive, nor is any one factor determinative of whether the witness should be produced.[8] *Id.* It is within the discretion

---

**6.** The military judge had stated earlier that two days' notice was insufficient notice to the government. Whether the military judge considered the 13 June notice, which did not contain a sufficient synopsis of expected testimony, in compliance with R.C.M. 703(c) is unclear. If the military judge had believed that the 13 June notice was sufficient, the government would have been on notice of the requested witnesses three days prior to trial. The military judge probably misspoke, intending to refer to the 14 June notice.

**7.** *See also Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (The Compulsory Process Clause of the Sixth Amendment may, in an appropriate case, be violated by the impo-

sition of a discovery sanction that entirely excludes the testimony of a material defense witness.).

**8.** In comparison, factors to be considered when determining whether a witness is material to decide an appropriate sentence are

whether the testimony relates to disputed matter; whether the Government is willing to stipulate to the testimony as fact; whether there is other live testimony available to appellant on the same subject; whether the testimony is cumulative of other evidence; whether there are practical difficulties in producing the witness; whether the credibility of the witness is significant; whether the request is timely; and whether another form of present-

of the military judge to order production of a witness.

■ Although untimeliness is not *per se* grounds for denying a request for a witness, timeliness of a defense request for a witness may be considered. *United States v. Mitchell,* 11 M.J. 907, 910 (A.C.M.R. 1981), *affirmed in part, reversed in part,* 15 M.J. 214 (C.M.A.1983). A witness request must be

> submitted in time reasonably to allow production of each witness on the date when the witness' presence will be necessary. The military judge may set a specific date by which such lists must be submitted. Failure to submit the name of a witness in a timely manner shall permit denial of a motion for production of the witness, but relief from such denial may be granted for good cause shown.

R.C.M. 703(c)(2)(C).[9] The "touchstone for untimeliness should be whether the request is delayed unnecessarily until such a time as to interfere with the orderly prosecution of the case." *United States v. Hawkins,* 19 C.M.R. 261, 268 (C.M.A.1955). The rules do not set out a specific timetable for submission of witness requests; however the discussion in R.C.M. 703(e)(1) does suggest that "a request for the attendance of a military witness should be made so that the witness will have at least 48 hours notice before starting to travel to attend the court-martial."

■ In this case, the defense counsel verbally informed the trial counsel of the names of the witnesses that would be needed six days before trial. He followed the verbal notice with a written list three days before trial.[10] That list was rejected by the trial counsel the next day because it did not contain the required synopsis of expected testimony. The defense counsel resubmitted the list with the required synopsis later that same day (two days before trial).[11] In light of the fact that the trial counsel had verbal and written notice that these witnesses would be requested, that the witnesses were no more than a three-hour drive away from the site of the trial, that the witnesses were in appellant's unit and would have been aware of appellant's court-martial, and the fact that an appropriately formulated witness list was submitted to trial counsel two days, almost 48 hours, before the trial was due to commence, we find that the military judge erred in denying appellant's motion for production of witnesses based solely on the untimeliness of the request. *See United States v. Johnson,* 3 M.J. 772 (A.C.M.R.), *petition denied,* 4 M.J. 50 (C.M.A.1977) (even if untimeliness of trial defense counsel's request for a witness could be a valid basis for denial of production of the witness, denial was not appropriate where travel between the location of the witness

ing the evidence (*i.e.,* former testimony or deposition) is available and sufficient. *United States v. Combs,* 20 M.J. at 442–3. *See also* R.C.M. 1001(e) (limitations for production of witnesses for the presentence proceedings).

9. In most jurisdictions, the military judge establishes rules of court for the jurisdiction in which he presides. These rules set out when requests for witnesses should be made. There was no mention in this case whether there were any rules of court in effect at Fort Dix.

10. Trial counsel claimed that he could not act on the written list received on Monday because the Staff Judge Advocate's office was closed. However, it appears from the record that the office was closed on Monday afternoon and the written list was served on trial counsel Monday morning.

11. Trial counsel contended that he could not act on defense counsel's verbal notice of witnesses because the government could not authorize the

expenditure of funds to bring witnesses until defense counsel had complied with the rules and supplied a written list of the witnesses along with a synopsis of their expected testimony. Assuming that the trial counsel acted appropriately in rejecting the defense counsel's initial written list of witnesses because of the absence of a synopsis, the trial counsel should have anticipated that the defense counsel would immediately resubmit the list with the synopsis. The trial counsel was not precluded from initiating contact with these witnesses or their commander to arrange their presence at appellant's court-martial. All three witnesses were from the same unit as appellant and should have been relatively easy to locate. At a minimum, the trial counsel could have notified the witnesses or their commander the previous Friday that they may be called to appear at appellant's court-martial.

and the site of the trial involved a trip of no more than two hours by car).

In this case, when ruling on the motion for production of witnesses, the military judge did not address whether the requested witnesses were material or cumulative. If the military judge had examined the materiality of the testimony of the witnesses, he would have found that Sergeant Richard Sprowal [12] would have provided material, noncumulative testimony. Sergeant Sprowal would have testified as to appellant's good military character and that he had observed appellant loan money to the undercover agent, Investigator B. Appellant explained his possession of the marked CID funds as the money Investigator B had used to repay the loan. Sergeant Sprowal would also verify that Investigator B was constantly loitering around the supply room and badgering appellant during duty hours.

The other witnesses' testimony may have been cumulative with the testimony of Sergeant Sprowal to some extent in that they would have also testified that Investigator B was constantly "bugging" appellant and that appellant had good military character.[13] However, these witnesses, as immediate supervisors of appellant, would have testified regarding appellant's character based on their day-to-day observations. Other witnesses who were present at trial and testified regarding appellant's character did not have the close contact with appellant as did the witnesses who were not produced. Furthermore, these witnesses would have testified that they counselled Investigator B "several" times about staying away from appellant which is contrary to Investigator B's testimony. At trial, Investigator B denied being counselled to stay away from appellant more than once.

■ "An accused cannot be forced to present the testimony of a material witness on his behalf by way of stipulation or deposition." *United States v. Sweeney*, 34 C.M.R. at 383 *quoting United States v. Thornton*, 24 C.M.R. 256, 259 (C.M.A.1957). *See also United States v. Carpenter*, 1 M.J. at 386; *United States v. Bennett*, 12 M.J. 463, 466 (C.M.A.1982). *But see United States v. Tangpuz*, 5 M.J. at 429 (the Court of Military Appeals recognized that under some circumstances, alternatives, such a depositions, may be appropriate in lieu of the personal attendance of a requested witness). If the military judge abused his discretion in refusing to grant an accused's request for a witness, the accused's stipulation to the expected testimony of the witness will not be controlling. *United States v. Sweeney*, 34 C.M.R. at 383. Thus, appellant's submission to stipulations of expected testimony will not defeat his claim that the military judge erred in requiring the production of the witnesses.

■ Since we have concluded that the military judge erred in not compelling the attendance of material witnesses requested by the defense, we must now decide whether "evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice." *United States v. Fisher*, 24 M.J. at 362 (citations omitted).

Under the circumstances of this case, we cannot determine "beyond a reasonable doubt" that Sergeant Sprowal's testimony or the testimony of the other two witnesses would not have affected the outcome of appellant's trial. This case was essentially a credibility contest between the Investigator B [14] and appellant. No other persons

---

**12.** At trial, the trial counsel claimed that he could not locate Sergeant Sprowal because he was away on temporary duty.

**13.** One witness, Staff Sergeant Donald Sullivan, was on terminal leave pending his ETS. The other witness, a civilian supervisor, was apparently on duty and waiting to be notified by the government that he would be required as a witness at appellant's court-martial.

**14.** Investigator B is a criminal investigator from the Criminal Investigation Command at Fort Meade, Maryland. He was working undercover with the drug suppression team at Carlisle Barracks. His "cover" was to work in the supply office.

were present during the alleged drug distributions and although Investigator B was "briefing" his superiors on the drug transactions with appellant, the alleged drug transactions took place unsupervised and without surveillance. Investigator B denied any loan agreement between himself and appellant; therefore Sergeant Sprowal's corroboration of the existence of a loan was crucial to appellant's defense. Investigator B also denied "bugging" appellant and being counselled several times to stay away from appellant's duty area. Except for Investigator B's testimony, there was no evidence introduced which indicated that appellant used or distributed drugs.[15] Appellant's entire defense rested on whether the court members believed that Investigator B was trying to set up appellant.[16] In light of these facts, we cannot conclude beyond a reasonable doubt that the findings of guilty would be the same if the defense witnesses had testified.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge KENNETT and Judge GIUNTINI concur.

---

15. A rusty razor blade was found in the glove compartment of appellant's car and several match books with crimped or bent corners were found in appellant's home and car. The CID agents who apprehended appellant and searched appellant's home and car believed that these items were "drug paraphernalia." However, no drug residue was found on these items and appellant's wife explained that she used the match books to clean her nails and that the razor blade had been in the car over two years. No other drugs or residue was found. Other soldiers testified that appellant had not demonstrated either on the job or in his personal life any tendencies which would indicate drug use or that he "sold" drugs.

16. Appellant explained that he gave Investigator B baking soda and pretended that it was cocaine in order to get Investigator B to stop "bugging" him. Appellant claims that Investigator B did not appreciate the humor of getting baking soda instead of cocaine and that Investigator B promised to get back at appellant.