UNITED STATES, Appellee,

v.

Specialist Wendell R. JOHNSON, 249–47–7756, United States Army, Appellant.

ACMR 9102539.

U.S. Army Court of Military Review.

26 Feb. 1993.

For Appellant: Captain Thomas D. Wight, JAGC (argued); Major Robin L. Hall, JAGC, Captain Mark L. Toole, JAGC (on brief).

For Appellee: Major Timothy W. Lucas, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC (on brief).

Before CREAN, GONZALES, and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

DELL'ORTO, Judge:

Contrary to his pleas, the appellant was found guilty, by a general court-martial composed of officer and enlisted members, of disrespect to a superior commissioned officer and assault on a commissioned officer in the execution of his duties, in violation of Articles 89 and 90, Uniform Code of Military Justice, 10 U.S.C. §§ 889 and 890 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three months and reduction to Private E1.

The appellant contends that the military judge erred by denying a defense request that he order the government to produce a material witness the defense had previously requested, that the military judge abandoned his impartial role and actively participated in the appellant's prosecution, and that the military judge erred by failing to give the members a complete instruction on the issue of divestiture. The appellant also attacks the sufficiency of the evidence. As to the instructional error, we agree that the military judge erred, but we find no prejudice to the appellant. As to the appellant's other assertions of error, we disagree and affirm.

## I. Facts

At 2100 hours on Saturday, 24 August 1991, First Lieutenant (1LT) P was patrolling the outdoor areas of the 101st Support Group as part of his duties as the group staff duty officer. At the time, he was assigned to the 102d Quartermaster Company. He was in his battle dress uniform and accompanied by his driver, Specialist (SPC) B, who was driving a Commercial Utility Cargo Vehicle (CUCV). As he arrived at the area adjacent to buildings occupied by the 541st Transportation Company and 102d Quartermaster Company, he observed a number of soldiers and family members standing near vehicles illegally parked in the fire lanes adjacent to the buildings. He recognized a truck belonging to the 541st Transportation Company's first sergeant, and correctly assumed that the first sergeant was in the company area. He entered the building and spoke with the first sergeant who informed 1LT P that he had already directed the people to move the vehicles from the fire lanes. They departed the building together and walked to where the first sergeant's vehicle was parked. Specialist B followed them in the CUCV. The first sergeant entered his truck and departed and 1LT P began to enter the passenger side of the CUCV. As he did so, 1LT P heard the appellant say, "Why don't you come over here and get some of this?" Although his back was turned and there were several soldiers standing with the appellant, 1LT P recognized the appellant's voice since the appel-

lant had been assigned to 1LT P's platoon in 1989 for approximately two months.

First Lieutenant P approached the appellant, who was leaning against an automobile with his back to the vehicle, placed his right hand (he held papers in his left hand) on the appellant's left shoulder and asked, "What's wrong Johnson?" The appellant responded by grabbing 1LT P by the shirt, spinning him around, and pushing him back against the automobile which the appellant had been leaning against. The appellant told 1LT P, "I'll fuck you up," prior to other soldiers pulling him away from the lieutenant. As the appellant walked away, 1LT P directed him to return. First Lieutenant P told the appellant, "Son, you need to calm down." The appellant responded by calling 1LT P "Boy" several times and inviting the lieutenant to take off his uniform and not hide behind his rank. While the verbal confrontation continued, SPC B had gone inside and returned with the 541st Transportation Company's Charge of Quarters (CQ). The CQ stepped between the appellant and the lieutenant, directed the appellant to report to the CQ desk, and returned to his post to call the appellant's chain of command.

Shortly thereafter, 1LT P followed the CQ inside, as did the appellant, SPC B, and a number of the witnesses to the events that had occurred outside. Other company soldiers passed by the CQ desk during the next ten minutes as the CQ attempted to contact the appellant's chain of command. Meanwhile, 1LT P and the appellant paced back and forth across the area between the front of the CQ desk and the building exit. At various times, when 1LT P would stop

and stare at the appellant, the appellant would ask, "What are you looking at?" and 1LT P would respond, "I'm looking at you, Son." After several of these exchanges, the appellant approached 1LT P, whose back was against a wall, yelled at the lieutenant, and began poking his finger at 1LT P's face, making contact with the lieutenant's cheek. In the ensuing argument, 1LT P told the appellant to stop. When he failed to do so, 1LT P reached up and swatted the appellant's hand away. The appellant then quickly struck 1LT P twice on the left side of his face with a closed right fist. The lieutenant attempted to defend himself until others in the area pulled the appellant and 1LT P apart.

## II. Non-production of a Material Witness

### A. Use of an R.C.M. 802 Conference [1]

Appellant asserts that the military judge erred by not requiring the government to produce a material witness whom the trial defense counsel had requested prior to commencement of the court-martial. As a sub-issue raised in oral argument, and pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), the appellant also contends that the military judge improperly ruled on the witness-production request at an R.C.M. 802 [2] conference. The appellant's court-martial took place on 31 October and 21 and 22 November 1991. At an Article 39(a) [3] session on Thursday, 21 November 1991, prior to the appellant's arraignment, the military judge sua sponte summarized the telephone conference [4] that had occurred on Tuesday, 19 November 1991. That conference addressed the defense request for Corporal (CPL) G as a witness on the merits. In slightly over

---

1. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 802 [hereinafter MCM, 1984 and R.C.M. respectively].

2. The rule, in pertinent part, states:
   **Rule 802. Conferences**
   (a) *In general.* After referral, the military judge may, upon request of any party or sua sponte, order one or more conferences with the parties to consider such matters as will promote a fair and expeditious trial.
   (b) *Matters on record.* Conferences need not be made part of the record, but matters agreed upon at a conference shall be included in the record orally or in writing. Failure of

a party to object at trial to failure to comply with this subsection shall waive this requirement.
   (c) *Rights of parties.* No party may be prevented under this rule from presenting evidence or from making any argument, objection, or motion at trial.

3. UCMJ art. 39(a).

4. "No place or method is prescribed for conducting a conference. A conference may be conducted by radio or telephone." R.C.M. 802(a) discussion.

four pages of the record of trial, the trial defense counsel, the trial counsel, and the military judge discussed the timing of the defense's request for the witness, the substance of CPL G's expected testimony, and CPL G's current duty status and location.[5] The military judge noted that, during the conference, he had ascertained that there were four other eyewitnesses who would be available to testify for the defense, and despite the fact that CPL G would be the only noncommissioned officer testifying, he found him to be cumulative, albeit available. He did not order the government to produce CPL G. Although the trial defense counsel did not request a continuance, the military judge stated, "I'm not going to require the Government, based on the late notice, to try and delay the case."

This Court has recently and repeatedly cautioned against too liberal a use of R.C.M. 802 conferences. *United States v. Washington*, 35 M.J. 774 (A.C.M.R.1992); *United States v. Loving*, 34 M.J. 956, 963 n. 10 (A.C.M.R.), *pet. for reconsid. denied*, 34 M.J. 1065 (A.C.M.R.1992). In this instance, however, the military judge seemingly had justification for using the conference to resolve the witness issue. The discussion to R.C.M. 802(a) states:

Occasionally it may be appropriate to resolve certain issues, in addition to routine or administrative matters, if this can be done with the consent of the parties. For example, a request for a witness which, if litigated and approved at trial, would delay the proceedings and cause expense or inconvenience, might be resolved at a conference. Note, however, that this could only be done by an agreement of the parties and not by a binding ruling of the military judge. Such a resolution must be included in the record.

It is clear in the record that the trial defense counsel disagreed with the military judge's ruling denying the defense CPL G. Significantly, however, the military judge permitted the trial defense counsel to fully state his objection, to proffer the substance of CPL G's expected testimony, and to argue his position consistent with R.C.M. 802(c). We are confident that the military judge's summary of the conference and matters addressed by both counsel during the discussion that followed the military judge's on-the-record summary of the conference created an adequate record upon which we may fulfill our statutory duties under Article 66, UCMJ.[6]

5. Corporal G was known to both sides. On 14 September 1991, he provided a sworn statement that described what he had observed of the initial outdoor confrontation on 24 August 1991. The trial defense counsel asserted that he had spoken to CPL G and he would testify substantially as follows:

He says that he was standing 20 to 30 meters away and he was standing on a side angle view and he saw—he observed that First Lieutenant P[ ] and First Sergeant H[ ] were talking, then he observed First Sergeant H[ ] leave and he saw First Lieutenant P[ ] starting to get into the vehicle, CUTV [sic], and then he turned around—then First Lieutenant P[ ] turned around and got out of the CUTV [sic] and walked directly to Specialist Johnson, placing his right hand behind his shoulders and his left hand up into his chest or neck and shoving him into the car.

The trial counsel disagreed with this representation and advised the military judge that CPL G had informed him that as 1LT P approached the appellant and attempted to place his right hand on the appellant's left shoulder, the appellant quickly reacted prior to 1LT P making contact with the appellant's shoulder. The trial defense counsel told the military judge that he had contacted CPL G's unit on Friday, 15 November

1991, learned that CPL G had signed out on leave, and then called the trial counsel and orally requested that CPL G be present as a witness. The trial counsel denied that he received any call from the defense counsel on Friday, 15 November, and asserted that the first notice he had of the defense request for CPL G was a handwritten request for witnesses received on Monday afternoon (18 November 1991). The trial counsel informed the military judge, "At this moment, according to the information he [CPL G] provided me yesterday, he should be somewhere in Niagara Falls, New York on his honeymoon."

6. We echo Senior Judge De Giulio's concerns about the pitfalls of R.C.M. 802 conferences as expressed in *Washington*, 35 M.J. at 776. While the discussion to R.C.M. 802, as noted *supra*, specifically addresses witness-production issues as appropriate for conference resolution, it does so only in the context of the approval of a request for a witness. The discussion is silent as to situations, as in this case, where the request is denied. Were it not for the complete discussion of the issue on the record in the Article 39(a) session following the military judge's summary of the conference, our holding

### B. The Military Judge's Ruling

■ The government called three witnesses during its case-in-chief and no rebuttal witnesses. Of the three, 1LT P and SPC B testified about the assaults that took place both outside and inside near the CQ desk. The CQ, Sergeant S, testified about what occurred outside after the first assault and about the second assault inside near the CQ desk. The trial defense counsel called a total of eight witnesses, including the appellant. Of those, five testified about the events that occurred outside and seven testified about the events that occurred inside. Corporal G would only have testified about what occurred outside. The defense testimony was generally consistent in depicting 1LT P as the aggressor. The defense witnesses generally testified that as 1LT P moved from the CUCV, he approached the appellant, and said words to the effect of "Specialist Johnson, I don't know what I'm going to do with you." They generally stated that 1LT P immediately placed his right arm around the appellant's neck and hooked the appellant's neck between 1LT P's forearm and upper arm as if to place the appellant in a headlock. All of the witnesses to the outdoor assault placed themselves in close proximity to the appellant at the time of the assault, while SPC A testified that he was just exiting the building with CPL G where, from twenty to twenty-five feet away, he observed the outdoor assault.

■ "The sixth amendment to the United States Constitution grants to an accused in a criminal prosecution the right 'to have compulsory process for obtaining witnesses in his favor.'" *United States v. Hinton*, 21 M.J. 267 (C.M.A.1986) (*quoted in United States v. Brown*, 28 M.J. 644, 646 (A.C.M.R.1989); R.C.M. 703. That right, however, is not absolute and may be circumscribed by considerations of relevancy and materiality. *Brown*, 28 M.J. at 646 (citations omitted). "An accused has the right to have the testimony of a witness when such testimony is material to an issue before the court." *Id.* (citation omitted). Expected testimony is "material if it 'negate[s] the Government's evidence or ... support[s] the defense.'" *Id.* (quoting *United States v. Fisher*, 24 M.J. 358, 361 (C.M.A.1987)). "However, a witness whose testimony is material need not be produced if the testimony is cumulative to that of other witnesses." *Id.* (citations omitted).

The military judge made no express finding of CPL G's materiality. We believe, however, that he did find that CPL G's testimony was material to the defense, for he expressly based his ruling denying the defense request for CPL G on his determination that CPL G's testimony would be cumulative with that of the other defense witnesses. It was not improper for the military judge to consider the untimeliness of the defense request in determining to proceed in CPL G's absence. *Id.* at 647. Even if we were to find that the trial defense counsel had made an oral request for CPL G as early as Friday, 15 November 1991, it is undisputed that CPL G had already departed on leave to a location some distance from Fort Campbell.[7] The military judge's determination not to order CPL G's production was a matter within his discretion. *Id.* at 646. We hold that he did not abuse his discretion.

### III. The Military Judge's Role

■ The appellant next contends that the military judge abandoned his impartial

---

on this issue might very well be different. While an R.C.M. 802 conference may indeed suffice for those instances where the military judge concurs in the defense request and orders the witness produced, it will not be sufficient where the judge denies the request. Where the request is denied, the issue should be fully litigated in an Article 39(a) session, in the presence of the accused. While the temptation to resort to an R.C.M. 802 conference is certainly greater when the trial participants are geographically dispersed, that certainly does not seem to be the case here where it appears that all parties to this trial, including the military judge, were assigned at Fort Campbell.

7. Had this entire issue been more fully litigated at an Article 39(a) session, we might have learned when CPL G was expected to return from his leave. As the military judge specifically found that CPL G was not unavailable, presumably, he would have ordered CPL G produced had he found his testimony to be non-cumulative.

role and became an advocate for the prosecution through his extensive examination of witnesses. He contends that the military judge, during his extensive questioning of the witnesses, elicited evidence of uncharged misconduct by the appellant and several of the defense witnesses in the form of testimony concerning alcohol consumption and disobedience of the orders of 1SG H and 1LT P; asked questions that exceeded the scope of those asked by either the trial counsel or trial defense counsel; asked questions designed to provide key elements of offenses that the government had failed to prove; and, asked questions of defense witnesses that effectively cross-examined them and diminished their credibility in the eyes of the court members. We disagree with all of these contentions.

This was a hotly contested case in which both sides depended almost exclusively on the testimony of eyewitnesses to an unusual series of verbal and physical confrontations between a commissioned officer and an enlisted soldier. The abilities of each witness to observe events as they unfolded on 24 August 1991, and then objectively relate their observations of those events three months later were critical to the court members' determinations of the appellant's guilt or innocence of the offenses with which he was charged.

The military judge or the members may interrogate witnesses called by the parties. MCM, 1984, Mil.R.Evid. 614(b) [hereinafter Mil.R.Evid.]. It is the tenor of the military judge's questions, rather than their sheer number, that is a significant factor in determining whether the judge abandoned his impartial role. *United States v. Shackelford,* 2 M.J. 17 (C.M.A. 1976). As this Court has previously held:

> The test for determining whether a military judge has abandoned his role and become a partisan advocate is a subjective one. The totality of circumstances must be considered. Although the military judge cannot lay aside his impartiality and become an advocate for one side or the other, he can, and sometimes must, ask questions to clear up uncer-

tainties in evidence or further develop the facts.

*United States v. Wood,* 29 M.J. 1075, 1078 (A.C.M.R.), *pet. denied,* 31 M.J. 492 (C.M.A.1990) (quoting *United States v. Reynolds,* 19 M.J. 529, 533 (A.C.M.R.1984), *aff'd,* 24 M.J. 261 (C.M.A.1987)).

There are a variety of ways in which a military judge can demonstrate the abandonment of his impartial role. *See United States v. Holmes,* 1 M.J. 128 (C.M.A.1975) (error for military judge to question a defense witness in a manner that was more inquisitorial than impartial and with the apparent purpose of discrediting the witness rather than clarifying a point); *United States v. Clower,* 23 U.S.C.M.A. 15, 48 C.M.R. 307 (1974) (error for the military judge to question the accused in a manner akin to impeachment and to effectively communicate to the court members his personal belief that the accused was less than credible); and *United States v. Wilson,* 2 M.J. 548 (A.C.M.R.1976) (error for military judge to refer to facts outside the record of which he was aware from previously tried case, to be unusually critical of trial defense counsel's redirect examination of a major defense witness, and to limit the trial defense counsel's cross-examination).

While the number of questions posed by the military judge to all witnesses who testified was unusually large, we find nothing in their tenor to indicate that the military judge had abandoned his impartial role. His questions aided neither the government nor the defense. For the most part, the questions merely clarified the location of each witness and the precise acts he observed undertaken by the appellant and 1LT P. No witness's credibility was attacked. The uncharged misconduct alluded to by the appellant in his brief was nothing more than whether any of the witnesses, including the appellant, had consumed any beer during that day or evening, a weekend day. Significantly, the trial defense counsel never objected to any question posed by the military judge and never asked for either a sidebar or Article 39(a) session to complain about the judge's questions or the tone expressed in asking them at any point during or after the mili-

tary judge posed questions to each of the eleven witnesses who testified on the merits for both sides.[8]

## IV. Instructional Error

■ The appellant also contends that the military judge erred by providing the members with an incomplete instruction on the special defense of unprotected victim, more commonly referred to as divestiture. We agree that the military judge erred, but only with respect to the instruction as it pertained to the Specification of Charge I (Disrespect to a Superior Commissioned Officer). We find no error in the instruction as it pertained to the Specification of Charge II (Assault on a Superior Commissioned Officer in the Execution of his Office), and no prejudice to the appellant.

As he continued his instructions to the members concerning the Specification to Charge I, the military judge stated:

> Now, the evidence has raised the issue as to whether Lieutenant P[ ] conducted himself prior to the charged offense in a manner which took away his status as a superior to the accused acting in the execution of his office. An officer whose own language and conduct under all the circumstances departs substantially from the required standards of an officer and a gentleman, appropriate for the officer's rank and position under similar circumstances, is considered to have abandoned that rank and position. Now, in determining this issue you must consider all the relevant facts and circumstances relating to the testimony of the witnesses as to Lieutenant P[ ]'s actions and words towards the accused when he was outside the car.

Up to that point, the instruction was complete. The military judge, however, failed to conclude the instruction with the following language:

> You may find the accused guilty of disrespect to a superior commissioned officer in violation of Article 89 of the Uniform Code of Military Justice only if you are satisfied beyond reasonable doubt that First Lieutenant P by his conduct and language did not abandon his status as a superior commissioned officer of the accused.

Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 3–19b Note 4 (1 May 1982). There was no lesser included offense with respect to Charge I. In instructing the members on Charge II and one of its lesser included offenses (Assault on a Commissioned Officer not in the Execution of his Office), the military judge twice correctly gave the complete divestiture defense instruction, including the erroneously omitted language from the instruction pertaining to Charge I. In all other respects, his instructions concerning reasonable doubt and burden of proof were correct.

■ Upon being asked by the military judge whether either counsel had any objections or additions to the instructions, both the trial counsel and the defense counsel answered in the negative. Nevertheless, we will not apply waiver to the failure to object to an incorrect instruction on a special defense. *United States v. Ward*, 16 M.J. 341, 348 (C.M.A.1983); *United States v. Donahue*, 22 C.M.R. 436 (A.C.M.R.1956).

8. At one point the trial defense counsel requested an Article 39(a) session and moved for a mistrial based on a comment made by the military judge when he overruled a trial counsel objection to questions the trial defense counsel had posed to PFC W on redirect examination. The objected-to examination consisted, in pertinent part, of the following:

Q: Now you've already testified that you and Specialist Johnson are friends.
A: Yes, sir.
Q: Do you know what perjury is?
A: Yes, sir.
TC: Objection, Your Honor.
MJ: Overruled.

DC: It goes to credibility.
TC: He appears to be bolstering, Your Honor.
MJ: Well, you've already impeached, so I'll allow him to bolster. Go ahead.

The trial defense counsel stated that he would have preferred the military judge to refer to the trial counsel's efforts as an attempt to impeach PFC W. Upon denial of the mistrial motion, the trial defense counsel requested, and was granted, an immediate cautionary instruction to the members to disregard any comment by the military judge that might seem to indicate his opinion about the credibility of any witness.

■ We may test this instructional error for prejudice. *United States v. Clark,* 7 M.J. 178 (C.M.A.1979). In doing so, we are guided by two long-standing principles. First, "[I]nstructions must be considered in their entirety and if, when gathered together by their four corners, they state the law properly and with sufficient clarity to be understood by the members of the court-martial, then they are not prejudicial even though one sentence may be technically incorrect." *United States v. Hatchett,* 2 U.S.C.M.A. 482, 9 C.M.R. 112, 118 (1953). Second, "[E]ven where the instructions given to the court-martial on one aspect of an offense are deficient, such error is not prejudicial where, on another offense the findings of the court as to the same matter are under correct advice." *United States v. Giordano,* 15 U.S.C.M.A. 163, 35 C.M.R. 135, 141 (1964) (citations omitted).

With the members having been twice correctly instructed on the divestiture defense subsequent to the incorrect partial instruction on that same defense, and considering the overall correctness of the balance of the instructions on the government's obligation to prove the appellant's guilt beyond a reasonable doubt, we are convinced that the members were not misled. Accordingly, we find no prejudice resulting from the error.

### V. Factual and Legal Sufficiency

■ Finally, the appellant attacks the sufficiency of the evidence with respect to both charges. After considering the evidence in the light most favorable to the prosecution, we hold that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. Accordingly, the evidence as to both charges and their specifications is legally sufficient. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt of both offenses beyond a reasonable doubt. Accordingly, the evidence as to both charges and their specifications is factually sufficient. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987).

We have also considered the remaining errors the appellant personally raised pursuant to *Grostefon,* but which we have not discussed above, and find them to be without merit. Having reviewed the entire record, we find the appellant's sentence appropriate.

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge GONZALES concur.