**UNITED STATES, Appellee,**

v.

**Private First Class Otto A. CAMPOS, 496–90–8899, United States Army, Appellant.**

**ACMR 9102015.**

U.S. Army Court of Military Review.

30 June 1993.

For Appellant: Captain Michael E. Smith, JAGC (argued), Colonel Malcolm H. Squires, Jr., JAGC, Major James M. Heaton, JAGC (on brief).

For Appellee: Captain Samuel J. Smith, Jr., JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph

A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC, Captain Gregory T. Baldwin, JAGC, (on brief).

Before NAUGHTON, BAKER, and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

NAUGHTON, Senior Judge:

A military judge sitting as a general court-martial at Fort Hood, Texas, convicted the appellant, contrary to his pleas, of willfully disobeying a noncommissioned officer, assaulting a noncommissioned officer in the execution of his office, and aggravated assault, in violation of Articles 91 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 891 and 928 (1988) [hereinafter UCMJ]. The appellant was sentenced to a bad-conduct discharge, confinement for four months, forfeiture of $250.00 pay per month for four months, and reduction to Private E1. The convening authority approved the sentence.

## I.

The appellant contends:

THE MILITARY JUDGE IN THIS CASE WAS SUBJECTED TO UNLAWFUL COMMAND INFLUENCE BECAUSE OF HIS PERCEIVED DEMOTION DUE TO HIS LENIENT SENTENCING PHILOSOPHY, AND THE CORRESPONDING GENERAL PERCEPTION THAT A SENIOR JUDGE HAD BEEN ASSIGNED TO FORT HOOD BECAUSE OF HIS HARSH SENTENCING PHILOSOPHY.

The assertion of unlawful command influence is based on a statement the military judge made when asked by the trial counsel if he knew of any grounds for challenge against him. Colonel (COL) Kenneth Mitchell, the military judge, stated as follows:

... I have recently been relieved of my duties and responsibilities as senior military judge at Fort Hood.... My concern over this matter is the rumor and the appearance that I might have been replaced due to my sentencing philoso-

phy.... A review of my previous sentences might, I suspect, reveal that on occasion, some of the sentences could have fallen short of that which was either anticipated or desired by the command. Regardless of the reason which resulted in me being relieved of my responsibilities and replaced by Colonel [Herbert] Green, I would like the defense to know that I will do my very best not to let it influence me in the performance of my duties as military judge in this case....

A lengthy voir dire by counsel then ensued. COL Mitchell stated that he had not been "relieved" because of his competence as a trial judge. He also stated he was not aware of any involvement by those outside the trial judiciary in assigning COL Green to Fort Hood. Upon learning that COL Green was being assigned to Fort Hood, COL Mitchell indicated that he called COL Malcolm Yawn, Chief Circuit Judge, Third Judicial Circuit, COL Francis Gilligan, Chief Trial Judge, and Brigadier General (BG) Kenneth Gray, Chief, U.S. Army Judiciary (his senior rater for officer efficiency report purposes), to express his concerns about COL Green's assignment. COL Mitchell emphasized that he had never been approached by superiors, local staff judge advocates, or convening authorities regarding his sentences.

When asked if there was a need for three military judges at Fort Hood, COL Mitchell responded in part:

I would hope there is, otherwise, that's why I am dubious as to Colonel Green's assignment, as I would assume that he was assigned here because of the need.... So I would guess that is part of the reason why I expressed my concern initially, is that I am a little at a loss for the reason for the assignment, and that, coupled with the rumor and the speculation, has prompted me then to indicate what I did earlier....

When asked whether there was any pressure on him to sentence, or even rule on the merits, in certain cases, or in a certain manner, COL Mitchell responded:

That's difficult to answer. I do feel a concern, but I can't really say that there is pressure. I don't feel anybody is pressuring me in this particular case, that if I were the judge and this was a judge alone case, and if the accused were convicted, I haven't received any pressure as to particular sentence which would be appropriate in this case at all, or in any of my prior cases, so it's very difficult to answer that. But, of course, there's the general concern which I do have.

Colonel Mitchell also stated during voir dire that he did not recall ever having talked to the III Corps Staff Judge Advocate, COL Alexander Walczak, about his lenient sentencing philosophy. He explained that it was unlikely that he had such a conversation with COL Walczak during the time frame the conversation allegedly took place because he, COL Mitchell, had just arrived and had not tried many cases. COL Mitchell indicated that he never received any letters of reprimand, admonishments or allegations of misconduct, and that he never received a relief for cause efficiency report. As far as he knew, there was no investigation into his conduct as a military judge. He was never counseled on the basis of his job as a military judge. In his personal opinion, COL Mitchell felt that having COL Green assigned to Fort Hood was a demotion for him. He found it odd since no one had ever talked to him about his sentences being too light. He was not aware of anyone complaining about his sentences to BG Gray or Major General William Suter, Acting The Judge Advocate General. He explained his philosophy on sentencing and the factors that he looks at in coming to a sentence determination. He stated that he is not "an advocate for excessive confinement."

Colonel Mitchell made a special finding that he had no reason to believe he was replaced because of his sentencing philosophy even though there was the appearance that this was why COL Green was assigned to Fort Hood. According to what COL Mitchell was told, COL Green was assigned to Fort Hood to create a trial judiciary center. COL Mitchell was not relieved for cause but was effectively replaced by someone now doing the duties that he used to perform. He was not aware of anyone directly trying to influence him. No one was putting pressure on him to change his sentencing philosophy, nevertheless, he was concerned. He would not intentionally change his sentencing philosophy because COL Green was assigned to Fort Hood.

Colonel Mitchell also addressed the perception for the need to impose a more lenient sentence than usual to show that he was not influenced. He stated he was aware of the need to carefully balance the needs of the accused as well as those of the government. COL Mitchell found that he did not have to recuse himself from the appellant's case.

After this voir dire of COL Mitchell, the defense did not challenge the military judge. Citing *United States v. Alexander*, 19 M.J. 614 (A.C.M.R.1984), *pet. denied*, 25 M.J. 206 (C.M.A.1987), the defense requested that it be allowed to present evidence on the issue of unlawful command influence. The military judge granted this request. Several witnesses were called by the defense to testify on the issue.

Among the witnesses was COL Green, the senior trial judge at Fort Hood. COL Green testified as to how he came to be assigned to Fort Hood and why there was a need to have three judges assigned to Fort Hood rather than two judges as previously had been assigned. He stated that when it came time for him to transfer from Germany he called COL Howard Eggers, chief of the trial judiciary. He told COL Eggers that his first choice of assignments was to remain in the trial judiciary and preferably to be assigned to Fort Hood. COL Eggers related that his preference was very possible because they were looking to add another judge to Fort Hood and create a trial judiciary center which would try cases originating out of Fort Polk, Louisiana, Fort Bliss, Texas, Fort Sam Houston, Texas, Fort Huachuca, Arizona, and Fort Hood. COL Green was willing to stay in Europe another year, but he really wanted to be assigned to Fort Hood because he is licensed to practice law in Texas.

Colonel Green later found that COL Craig Jacobsen was tentatively scheduled to go to Fort Hood and COL Ferdinand Clervi was tentatively scheduled to go to Fort Ord, California. In talking to COL Jacobsen, COL Green found out that COL Jacobsen wanted to be assigned to Fort Ord. He also discovered that COL Clervi wanted to go to Germany. COL Green called the Chief of Personnel, Plans, and Training in the Office of the Judge Advocate General, and told him that he could make three colonels very happy by making some changes in assignments. Subsequently, COL Green was assigned to Fort Hood.[1] COL Green also indicated that he went there for his own personal reasons. No one ever told him that he was going down to Fort Hood to straighten anything out. Additionally, he had never received any complaints about COL Mitchell's performance as a military judge.

Lieutenant Colonel (LTC) James Hewitt, also a military judge stationed at Fort Hood, testified that COL Mitchell was a moderate to above moderate sentencer. He never heard any complaints or signs of displeasure as to COL Mitchell's sentencing philosophy but he did mention that he perceived a problem with forum shopping by the counsel stationed at Fort Hood. He stated that he had telephone conversations with COL Green before COL Green arrived at Fort Hood, but they were only about his transfer and no judiciary business was discussed.

Other witnesses called were Major (MAJ) Philip Savoie, Chief of Criminal Law, III Corps, and MAJ Stephen Bross, Chief of Criminal Law, 1st Cavalry Division. They both basically testified as to COL Mitchell's reputation as a light sentencer, as to COL Green's reputation as a stiff sentencer, and that they were aware that COL Green's nickname is "Hanging Herb." MAJ Savoie testified that COL Green's reputation was far greater than his actual practice. They both testified that no commander had ever expressed any dissatisfaction with any aspect of military justice at Fort Hood. MAJ

Savoie had conversations with his Staff Judge Advocate, COL Walczak, about their concern over the light sentences. The conversations were among themselves in their official capacity and were in the form of "well, I wish we could have gotten a better sentence in that case." MAJ Savoie was not aware of COL Walczak ever expressing his dissatisfaction to anyone else.

Captain (CPT) Neeves, the trial defense counsel, primarily testified that during a "Hail and Farewell" reception at Fort Hood he overheard trial counsel complaining about the lenient sentences that COL Mitchell was giving out. He testified that COL Walczak joined the conversation stating that he was aware of the concern over the lenient sentences and that he had already talked to COL Mitchell about it. CPT Neeves brought this information to the attention of his superiors and was instructed to write a memorandum for record. He never used the information to challenge COL Mitchell.

■ The defense conceded that there was no evidence to show the existence of actual command influence, but the defense was concerned by the apparent unlawful command influence as described in *United States v. Allen*, 31 M.J. 572 (N.M.C.M.R. 1990), *affirmed*, 33 M.J. 209 (C.M.A.1991). Pursuant to *Allen*, the test for apparent unlawful command influence is "whether a reasonable member of the public, if aware of all the facts, would have a loss of confidence in the military justice system, and believe it to be unfair." *Allen* further states that "where any doubt exists as to the presence of unlawful command influence in the case, such doubt must be resolved in favor of the accused." *Allen*, 31 M.J. at 592. *See United States v. Johnson*, 14 U.S.C.M.A. 548, 34 C.M.R. 328, 331 (C.M.A.1964).

■ At the end of the second Article 39(a), UCMJ, session, COL Mitchell found no evidence that linked the occasional dissatisfaction voiced by some trial counsel

---

**1.** We judicially note that COL Jacobsen was subsequently assigned to Fort Ord and COL Clervi was assigned to Germany.

with his sentences and the assignment of COL Green to Fort Hood. He found nothing to suggest dissatisfaction was ever reported to prompt the assignment of COL Green to Fort Hood. COL Mitchell agreed with the government that there was no evidence of any unlawful command influence that would deny the appellant a fair trial. From the record, it seems that the appellant agreed since he specifically requested a judge alone trial before COL Mitchell.

The issue was again discussed in a post-trial Article 39(a), UCMJ, session. The military judge again made findings that his reputation for being a lenient sentencer did not have anything to do with COL Green's assignment to Fort Hood. This finding was made despite new information that complaints had been made to BG Gray and other members of COL Mitchell's chain of command about his light sentences. These complaints were made at the annual world-wide–SJA conference at Charlottesville, Virginia, in October of 1989. COL Mitchell made specific findings that the trial judiciary was sincere in their intentions to create a trial judiciary center at Fort Hood by bringing in a third judge. That was the reason COL Green was assigned. He was not sent there to "straighten things out."

The appellant asserts that, even though the military judge made specific findings that there was no unlawful command influence motivation behind the assignment of COL Green to Fort Hood, the military judge ruled that there was the appearance of improper command influence which would undermine the public's confidence in the court-martial system. *See United States v. Cruz,* 20 M.J. 873 (A.C.M.R.1985), *rev'd in part on other grounds,* 25 M.J. 326 (C.M.A.1987). Therefore, they contend the findings and sentence in the appellant's case should be set aside.

The government argues that the appellant's assertions of unlawful command influence are without merit. After extensive evidentiary hearings concerning the suggestion of unlawful command influence, the appellant did not challenge the military judge for cause but he specifically requested that he be tried by judge alone. The government asserts that the appellant is not entitled to a windfall—a dismissal—in this case under these circumstances. *Allen,* 33 M.J. 209; *United States v. Levite,* 25 M.J. 334, 340 (C.M.A.1987) (Cox, J., concurring).

This issue has no merit. The issue was raised by COL Mitchell. He initially believed he was being replaced by COL Green because he suspected that "everyone" was dissatisfied with his lenient sentencing philosophy. After several days of Article 39(a), UCMJ sessions litigating this issue, it is clear from the record that the defense argument is not supportable.

In a similar case involving the apparent effort to exercise unlawful command influence over military trial judges, the Court of Military Appeals clearly stated:

There is no doubt that the appearance of unlawful command influence is as devastating to the military justice system as the actual manipulation of any given trial. *Cf. United States v. Cruz,* 25 MJ 326 (CMA 1987). However, there must be something more than an appearance of evil to justify action by an appellate court in a particular case. "Proof of [command influence] in the air, so to speak, will not do." We will not presume that a military judge has been influenced simply by the proximity of events which give rise to the appearance of command influence in the absence of a connection to the result of a particular trial. *United States v. Thomas,* 22 MJ 388, 396 (CMA 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *see also United States v. Levite,* 25 MJ 334, 341 (CMA 1987) (Cox, J., concurring).

*Allen,* 33 M.J. at 212 (footnote omitted).

In the case at bar, it is apparent that the military judge was not influenced because no one in his judicial chain of command communicated to him any displeasure with his sentencing philosophy. Even assuming the local command was dissatisfied with his sentencing philosophy and unlawfully attempted to influence trial results by communicating their displeasure through COL Mitchell's superiors, the military judge

makes it clear on the record that the attempt failed. When attempts were made by local staff judge advocates to communicate displeasure with COL Mitchell's sentencing philosophy to his superiors, his superiors wisely chose not to interfere or communicate any concern to COL Mitchell. We are satisfied beyond a reasonable doubt that neither the military judge's perception of displeasure of the sentence adjudged by him nor the failed attempt to influence him caused him to violate his judicial oath to perform his duties in an impartial manner.[2] *Allen,* 33 M.J. at 212–13. *See United States v. Thomas,* 22 M.J. 388, 394–96 (C.M.A.1986). Thus, if any illegality existed, we are satisfied beyond a reasonable doubt that it was harmless, and the findings and sentence in the appellant's case were unaffected. *See United States v. Mabe,* 33 M.J. 200, 203 (C.M.A.1991).

## II.

Next the appellant contends:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING APPELLANT'S MOTION FOR THE PRODUCTION OF FIVE WITNESSES WHOSE TESTIMONY WAS CRITICAL TO A DETERMINATION OF THE ISSUE OF UNLAWFUL COMMAND INFLUENCE AND FORCING THE DEFENSE TO ENTER INTO STIPULATIONS OF EXPECTED TESTIMONY.

The appellant asserts that he was prejudiced because the military judge denied his motion to produce five critical witnesses.[3]

The appellant argues that because his motion was denied his Sixth Amendment right to confrontation was abridged.

■■■ The standard for review of a military judge's denial of a witness request is abuse of discretion. *United States v. Brown,* 28 M.J. 644 (A.C.M.R.1989). Some of the factors to be considered when determining whether or not to grant a motion for personal attendance of a witness are: (1) the issues involved in the case and the importance of the requested witness regarding those issues; (2) whether the witness will testify on the merits or on sentencing; (3) whether the witness' testimony would be cumulative; and (4) whether there are alternatives to personal appearance available, such as deposition, interrogatories or previous testimony. *Id.* at 646, (quoting *United States v. Tangpuz,* 5 M.J. 426, 429 (C.M.A.1978)).

■■ The government argues that the military judge did not abuse his discretion as a military judge, especially in light of his unequivocal declaration that he was not subject to any kind of improper influence despite COL Green's assignment to Fort Hood. The government argues that the appellant believed this since he decided not to challenge the military judge for cause and he specifically requested that the military judge sit alone as the courts-martial in his case. The government also argues that the appellant was well aware of the minimal need of the personal appearance of the witnesses because their testimony was not material and had no bearing on appellant's guilt or innocence. Under these circum-

2. Apart from the issue of alleged unlawful command influence is the question of whether COL Mitchell should have recused himself from further participation in the appellant's trial. The military judge is the final arbiter of his or her qualifications. Under the provisions of Rule for Courts–Martial 902(b) [hereinafter R.C.M.] a military judge should disqualify himself from sitting on a case if he is: (1) biased or prejudiced, (2) involved in the case as a prior participant, (3) a witness, (4) ineligible to act, or (5) personally interested in a case. Under R.C.M. 902(a) the military judge should disqualify himself where his impartiality might reasonably be questioned. As was the case in *United States v. Mabe,* 33 M.J. 200, 206 (C.M.A.1991), COL Mitchell's disclosure of these events, disclaimer

of any impact on him, voir dire, the presentation of evidence by the defense, and the opportunity for challenge by the defense satisfied the requirements of R.C.M. 902. Lastly, when given the opportunity to challenge COL Mitchell, the appellant did not challenge him and chose trial by military judge alone. This can be construed as a waiver of any disqualification by the appellant. *See* R.C.M. 902(e) (permitting waiver of a R.C.M. 902(a) disqualification by the parties after full disclosure).

3. These individuals were: BG Gray; COL Walczak; COL Dennis Corrigan, Chief, Personnel, Plans, and Training in the Office of the Judge Advocate General; COL Yawn; and COL Eggers.

stances, the government argues, the military judge's use of an available alternative to the personal appearance of the witnesses (i.e., stipulations of expected testimony) was reasonable and did not constitute an abuse of discretion.

We agree with the government's position. "This is not a situation where the accused is seeking to have a face-to-face confrontation with his accuser. Rather, this is an interlocutory matter which, although important to the [defense], was not dispositive...." *See Allen*, 33 M.J. at 214 (citation and footnote omitted). Accordingly, we are satisfied beyond a reasonable doubt that the appellant did not suffer prejudice to his substantial rights from the failure of the military judge to order the production of five witness to testify in person on the issue of alleged unlawful command control. *Id.*

### III.

■ The appellant also contends:

THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO CONVICT APPELLANT OF THE CHARGED OFFENSES BECAUSE HE LACKED THE REQUIRED *MENS REA* DUE TO AUTOMATIC AND UNCONTROLLABLE BEHAVIOR BROUGHT ON BY CLAUSTROPHOBIA.

The appellant argues that he is not raising insanity but instead is contending that the facts in this case present an issue of first impression. Can an appellant be guilty of an offense if his actions were the result of "automatic behavior" brought on by a claustrophobic panic attack? [4]

The appellant cites several military and state court cases which address similar issues.[5] Based on the case law cited by the appellant, it appears that there are two factors the courts consistently examine in determining whether "automatic behavior" is a valid defense. The courts look at (1) what is the motivation behind the appellant's behavior, or (2) was the appellant suffering from a condition affecting his ability to reason at the time the offenses were committed.

The appellant asserts that there was sufficient evidence presented at trial to show that he was in the midst of a claustrophobic panic attack at the time of the incidents. He points to specific examples from the record of trial to support his assertions. Additionally, there was testimony from three doctors who examined the appellant and testified that he suffered a panic attack, severe enough to produce automatic behavior during the charged incidents. The appellant contends that based on this overwhelming evidence, the military judge was not free to disregard the testimony presented at trial.

The appellant also asserts that the government failed to rebut the expert testimony thereby raising a reasonable doubt as to appellant's *mens rea*. Thus, the appellant argues the government failed to prove beyond a reasonable doubt that the appellant had the requisite intent to commit these offenses.

The government points to the test for legal and factual sufficiency of evidence pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) in support of its argument.

The government argues that, in keeping with the rules in *Jackson* and *Turner*, the military judge allowed the appellant to de-

---

**4.** The offenses at issue arise out of two incidents where the appellant asserts that his fear of confined or closed spaces caused him to suffer panic and anxiety attacks while riding in enclosed military vehicles and that these attacks precipitated the disobedience and assault charges.

**5.** *See, e.g., Ellis v. Jacob*, 26 M.J. 90 (C.M.A. 1988); *United States v. Johnson*, 3 U.S.C.M.A. 725, 14 C.M.R. 143 (1954); *United States v. Tarver*, 29 M.J. 605 (A.C.M.R.1989), *pet. denied*, 32

M.J. 316 (C.M.A.1991); *United States v. Emnett*, 47 C.M.R. 598 (N.C.M.R.1973); *United States v. Burke*, 28 C.M.R. 604 (A.C.M.R.1959); *United States v. Izard*, 4 C.M.R. 782 (A.F.C.M.R.1952). *See Fulcher v. State*, 633 P.2d 142 (Wyo.1981); *People v. Grant*, 46 Ill.App.3d 125, 4 Ill.Dec. 696, 360 N.E.2d 809 (1977); *State v. Welsh*, 8 Wash. App. 719, 508 P.2d 1041 (1973). *See also* Annotation, *Automatism or Unconsciousness as Defense to Criminal Charge*, 27 A.L.R. 4th 1067 (1984).

velop evidence concerning his mental condition through the testimony of the three expert witnesses. Nevertheless, he was not persuaded that the appellant's evidence about his lack of mental responsibility negated any intent elements of the offenses. The government also argues that the mere fact that three experts describe a soldier's mental condition does not automatically create a nexus between the condition and the offenses. Additionally, the government points out that only one of those experts actually examined the appellant at the time the offenses were committed. He found the appellant to be responsible for his actions and suffering from simple phobia at the time of the offenses. Moreover, the government also points out that none of the experts could identify the precise point when the appellant ceased to act intentionally, and they all disagreed about whether and to what degree appellant's condition would cause him to lose control or responsibility for his actions.

Finally, the government argues that viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the government contends this court should be convinced of appellant's guilt beyond a reasonable doubt. We agree with the government and find the appellant's contention to be without merit.

The remaining assignment of error has been considered and found to be without merit.

The findings of guilty and the sentence are affirmed.

Judge BAKER and Judge JOHNSTON concur.